UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN SAMUELS,

                     Plaintiff,

               -against-

NEW YORK DEPARTMENT OF LABOR
(NYDOL); UNITED STATES DEPARTMENT
OF LABOR (USDOL); ROBERTA REARDON;
DENISE MONTRAN,

                     Defendants.

23-CV-8004 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

       Plaintiff, who is proceeding *pro se* and *in forma pauperis*, currently resides in Portugal.

He alleges that Defendants violated his rights in connection with his application, made in 2020

while he was in Spain, to the New York State Department of Labor for Pandemic Unemployment

Assistance (PUA) and Federal Pandemic Unemployment Compensation (FPUC) benefits.[1]

       By order dated November 6, 2023, the Court dismissed the complaint but granted

Plaintiff leave to replead. Plaintiff filed an amended complaint (ECF 14), and the Court has

reviewed it. Plaintiff also filed a letter that is titled "complaint" (ECF 15), and the Court treats

that submission as a supplement to the operative amended complaint. The action is dismissed for

the reasons set forth below.

---

[1] The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 15 U.S.C. § 9001, *et seq.* established Pandemic Unemployment Assistance (PUA), a temporary federal unemployment program that provided benefits to certain individuals who were not otherwise eligible for state unemployment insurance benefits. 15 U.S.C. § 9021(b). It also established Federal Pandemic Unemployment Compensation, 15 U.S.C. § 9023; and Pandemic Emergency Unemployment Compensation, 15 U.S.C. § 9025.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

In his amended complaint, Plaintiff alleges the following facts. Plaintiff was out of the country in 2020, when he applied to the New York Department of Labor (NY DOL) for unemployment benefits. The NY DOL initially awarded him benefits but later rescinded that determination on the ground that he was ineligible for benefits.

A NY DOL notice of decision, which was attached to Plaintiff's initial complaint, states that: (1) Plaintiff was found to be ineligible for benefits effective March 9, 2020, on the basis that he "did not comply with reporting requirements"; (2) that he was overpaid $1456 in PUA; and (3) that he was overpaid $3600 in Federal Pandemic Unemployment Compensation (FPUC). (ECF 1-2 at 1.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and the ALJ found in Plaintiff's favor. The ALJ found that Plaintiff's case was distinguishable from other "travel" cases because (1) the New York DOL office had been closed since March 16, 2020, due to the pandemic, and thus he would have been unable to report even if he had been in New York; and (2) Plaintiff credibly testified that he had disclosed that he was in Spain, and the NY DOL failed to produce the representative with whom Plaintiff had spoken to support its argument disputing Plaintiff's statement. (ECF 1-2 at 4.)

On appeal, the Unemployment Insurance Appeal Board (UIAB) reversed the ALJ's decision in Plaintiff's favor but, according to Plaintiff, the UIAB "did not order Plaintiff to repay the funds he [had] received." (ECF 14 at 2.)

Plaintiff alleges that he "and other activists" had advocated for Americans "trapped overseas with unemployment issues" during the Covid-19 pandemic and that they had received "media attention and support from elected officials." (*Id.*) It is unclear when this took place and Plaintiff does not provide factual details about the alleged media coverage or support to which he is referring. He contends that NY DOL Commissioner Roberta Reardon and employee Denise

Montran, whose role is not identified, "retaliated against Plaintiff and other activists for their advocacy" and that "this retaliation is a violation of their First Amendment rights." (*Id.*)

Plaintiff asserts that "some individuals were awarded pandemic unemployment benefits while overseas without requiring a hearing, while others received benefits only after a hearing. Plaintiff notes that one case involved an individual who received benefits after winning his appeal before the UIAB. (*Id.*) He contends that "the differing treatment he received in comparison to others regarding eligibility for pandemic unemployment insurance" violated his rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 3.) He also argues that the NY DOL's in-person reporting policies discriminate against individuals based on "dual citizenship status and overseas location." (ECF 15 at 2.)

Plaintiff sues the United States Department of Labor (US DOL), the NY DOL, and NY DOL Commissioner Reardon and employee Montran. Plaintiff asserts claims under 42 U.S.C. § 1983, and New York State Human Rights Laws. He invokes the Tucker Act and the Administrative Procedure Act (APA) in connection with his claims against the US DOL.

Plaintiff seeks (1) to be awarded "the remaining funds owed from his employment claims" (ECF 14 at 3); (2) damages for alleged violations of his rights; and (3) injunctive relief, in the form of an order enjoining NY DOL Commissioner Reardon from "denying pandemic unemployment benefits based on dual citizenship status and overseas location." (ECF 15 at 2.)

## DISCUSSION

### A.    Claim for PUA and FPUC benefits

Plaintiff contends that the NY DOL denied him pandemic-era benefits to which he was entitled. Although Plaintiff had initially received benefits, and a NY DOL ALJ at one point found in Plaintiff's favor, the UIAB reversed that determination.

State law establishes procedures for a claimant to seek review of an adverse decision on unemployment insurance benefits.[2] Under the state's review scheme, Plaintiff's remedy for an adverse UIAB decision was an appeal to the Appellate Division, Third Department, N.Y. Lab. Law § 624. Plaintiff now asks this Court to award him "the remaining funds owed from his employment claims." (ECF 15 at 3.) He states that he is "still owed approximately nine months of unemployment benefits." (*Id.* at 4.) The Second Circuit, when faced with a similar claim, explained that lower federal courts lack the power to reverse the state's decision denying unemployment benefits:

> The complaint asks the district court to issue an order 'to pay the plaintiff the unemployment compensation due to him.' This request necessarily implicates review of the state administrative and judicial findings. It is well-settled that lower federal courts possess no power whatever to sit in direct review of state court decisions.

*Gyadu v. Unemployment Comp.*, 173 F.3d 844 (2d Cir. 1999); *see also Almanzar v. Zam Realty Mgmt. Co., LLC*, No. 11-CV-1168, 2011 WL 5865259 (S.D.N.Y. Nov. 22, 2011) (holding that, where plaintiff sought to have his "unemployment benefits returned," the district court lacked

---

[2] "A claimant who is dissatisfied with an initial determination of his or her claim for benefits . . . may, within thirty days . . . request a hearing." N.Y. Lab. Law § 620 (1)(a). Where such a hearing is requested, it "shall be held by a referee who shall render his or her decision within five days after the hearing is concluded." N.Y. Lab. Law § 620 (3)(b). The decision of a referee "shall be deemed the decision of the appeal board . . . unless an appeal is taken from such decision to the board." *Id.* Within twenty days after the "mailing or personal delivery of notice of the decision of a referee" the claimant may appeal to the appeal board by filing a notice of appeal in the local state employment office. N.Y. Lab. Law § 621. The appeal board may decide the case "on the basis of the record and of evidence previously submitted in such case. . . ., or it may in its discretion hear argument or hold a further hearing, or remand such case to a referee . . . ." *Id.* Within thirty days of "mailing or personal delivery of notice of a decision by the appeal board," an affected party "may appeal questions of law involved in such decision only to the Appellate Division of the New York State Supreme Court, Third Department. N.Y. Lab. Law § 624; *see also MacGilfrey v. Pugh*, 217 A.D.2d 888, 889 (3rd Dep't 1995) (noting that judicial review of a UIAB decision via the Appellate Division, Third Department is "the exclusive review procedure" that was "contemplated by the [New York State] Legislature," with respect to "direct appeals . . . when claimants are aggrieved after a decision of the" UIAB).

subject matter jurisdiction because the claim "necessarily implicates review of the state administrative and judicial finding"). The Court therefore lacks subject matter jurisdiction to award the unemployment insurance benefits that Plaintiff seeks.

**B.    NY DOL Commissioner Reardon and Denise Montran**

In addition to his claim for benefits from the NY DOL, Plaintiff seeks damages and injunctive relief from NY DOL Commissioner Reardon and NY DOL employee Denise Montran. He asserts claims, under 42 U.S.C. § 1983, for violations of his rights under the First and Fourteenth Amendments.

The Eleventh Amendment bars claims for damages against these state officials in their official capacities from proceeding in federal court. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 claims for damages against NY DOL Commissioner Reardon and NY DOL employee Montran in their official capacities are therefore barred by Eleventh Amendment immunity and must be dismissed.

The Court considers below whether Plaintiff states an official-capacity claim against either defendant under Section 1983 for prospective injunctive relief, or a personal-capacity claim for damages.

**1.      First Amendment Claim**

Plaintiff makes the following allegation:

Commissioner Roberta Reardon and NY DOL employee Denise Montran allegedly retaliated against Plaintiff and other activists for their advocacy in assisting Americans trapped overseas with unemployment issues. Plaintiff and others had been prominent activists receiving media attention and support from elected officials. This retaliation is a violation of their First Amendment rights.

(ECF 14 at 2.)

To state a personal-capacity claim against an individual under Section 1983, a plaintiff must allege facts showing the defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep' t of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff has not pleaded facts in his amended complaint about what Denise Montran or Commissioner Reardon personally did or failed to do that could give rise to an inference that they retaliated against him for the exercise of his First Amendment rights. To state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a

causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794

F.3d 290, 294 (2d Cir. 2015) (citing *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009).

Here, the allegations of retaliation are wholly conclusory. Plaintiff does not allege any

facts that would allow an inference of a causal connection between his advocacy and the UIAB's

denial of pandemic benefits to him in Spain. There are no allegations that either Reardon or

Montran were aware of his advocacy for benefits for Americans abroad, or that they took or

failed to take any action because of his advocacy. *See Twombly*, 550 U.S. at 555 (court need not

accept as true "[t]hreadbare recitals of the elements of a cause of action"). The Court therefore

dismisses Plaintiff's First Amendment retaliation claims, whether brought against defendants in

their personal capacities for damages or in an official capacity for injunctive relief, because the

allegations fail to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Equal Protection

Plaintiff seeks an order enjoining NY DOL Commissioner Reardon from "denying

pandemic unemployment benefits based on dual citizenship status and overseas location" (ECF

15 at 3), allegedly in violation of the Equal Protection Clause of the Fourteenth Amendment.

A plaintiff seeking injunctive relief can sue a state official in her official capacity in federal court

where the plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly

characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618) (citing *Ex parte

Young*, 209 U.S. 123 (1908)); *see also Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602, 606 (2d

Cir. 1993) ("Under *Ex parte Young*, acts of state officials that violate federal constitutional rights

are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in

federal court.").

Here, Plaintiff cannot seek "relief properly characterized as prospective" in connection

with these temporary pandemic unemployment insurance programs because the latest of these

ended on September 6, 2021, before Plaintiff filed this suit.[3] *See*, *e.g.*, *Winter v. New Mexico Dep't of Workforce Sols.*, No. 23-2014, 2023 WL 8889763, at *5 (10th Cir. Dec. 26, 2023) ("[T]he relevant benefits program has expired. Thus, injunctive relief preventing [Defendant] from continuing to block Appellants from applying for PUA benefits . . . would be meaningless."). The *Ex Parte Young* exception to Eleventh Amendment immunity therefore does not apply to Plaintiff's request to enjoin Commissioner Reardon from "denying pandemic unemployment benefits based on dual citizenship status and overseas location" (ECF 15 at 3), because no prospective relief is available for this expired program. The Eleventh Amendment thus bars an official-capacity claim against NY DOL Commissioner Reardon in federal court for alleged Equal Protection violations, even if Plaintiff's allegations were construed as seeking injunctive relief.

The Court also considers whether Plaintiff states a personal-capacity claim for damages against Commissioner Reardon under Section 1983 for past alleged violations of the Equal Protection Clause. Plaintiff can be understood as making two arguments that he was denied equal protection: (1) "[S]ome individuals were awarded pandemic unemployment benefits while overseas without requiring a hearing, while others received benefits only after a hearing" (ECF 14 at 2); and (2) "Commissioner Reardon's actions were discriminatory, as they targeted individuals based on their citizenship status and overseas location" (ECF 15 at 10), which "favored certain dual citizen[s] over others" (*id.* at 11).

---

[3] On December 27, 2020, the unemployment provisions of the CARES Act, including PUA, were extended through March 14, 2021, by the Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§ 201, 203-204, 206. On March 11, 2021, PUA and other benefits were further extended through September 6, 2021, by the American Rescue Plan Act of 2021. Pub. L. No. 117-2, §§ 9011, 9013-9014, 9016. These temporary programs then expired.

Plaintiff's first contention, that benefits decisions for individuals abroad were inconsistent, does not state a personal-capacity claim against Reardon because Plaintiff does not allege that she was personally involved in these benefits decisions. *See Spavone*, 719 F.3d at 135 ("[P]ersonal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

Moreover, such allegations of different outcomes among individuals applying from overseas are too vague and general to suggest that similarly situated individuals were treated differently for impermissible reasons. The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Student for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2172 (2023) ("At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class."). As a general rule, the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest. *See Heller v. Doe*, 509 U.S. 312, 320 (1993).

A plaintiff who does not allege discrimination based on a protected class may state a cognizable claim of discrimination, in violation of his right to equal protection, if he establishes that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diag. Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see*

*Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009) (summary order). To prevail on such a "class-of-one" equal protection claim, a plaintiff must establish that he and a comparator are "*prima facie* identical" by showing that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Hu* v. *City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (citation omitted).

Plaintiff's allegations that about the treatment of individiuls living abroad do not involve a protected class subject to heightened protection from discrimination. Moreover, the allegations that some PUA applicants abroad had hearings and others did not are insufficient to plead that the applicants were similarly situated. Plaintiff does not allege facts showing that his situation is so similar to that of a particular comparator that the possibility that legitimate policies justify the differential treatment is excluded. Plaintiff's allegations about different outcomes for different applicants thus do not state a Section 1983 claim for a violation of the Equal Protection Clause on the ground that he was treated differently without a rational basis.

Plaintiff's second contention, that dual citizens overseas were treated differently from dual citizens residing in New York, can be understood as a challenge to a policy adopted by Commissioner Reardon, for which she might be considered "personally involved" for purposes of an individual-capacity claim for damages.[4] Plaintiff can be understood as arguing that considering his "overseas location" in making a benefits determination violates his rights.

---

[4] *See, e.g., Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) ("[W]here a plaintiff can establish that a senior official promulgated an unconstitutional policy with a culpable mental state—in this case, deliberate indifference— . . . such official could be deemed to be personally involved in a constitutional violation.").

Decisions from the Appellate Division, Third Department, suggest that overseas location has been considered as a factor when the NY DOL made factual determinations about whether an individual is "ready, willing and able to work in his [or her] usual employment or in any other for which he [or she] is reasonably fitted by training and experience." N.Y. Labor Law § 591(2).[5]

Courts that have considered whether taking geographic location into account when awarding benefits have reasoned that it bears a rational relationship to an appropriate governmental interest. *See, e.g.*, *Galvan v. Catherwood*, 324 F. Supp. 1016, 1019 (S.D.N.Y. 1971) (holding that "state policy denying unemployment benefits to claimants who moved to Puerto Rico is reasonably and directly related to the long-standing and valid policy of the unemployment insurance provisions of New York law— e.g. that a claimant be 'ready, willing and able to work.' New York Labor Law § 591(2)"), *aff'd sub nom. Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973); *Gonzalez v. Bell Lab'ys*, 132 N.J. Super. 330, 338 (App. Div. 1975) ("[C]laimant effectively removed himself from the labor market when he returned to his home in Puerto Rico and was, therefore, properly denied unemployment compensation benefits."). Plaintiff's allegations thus do not show that Commissioner Reardon adopted a policy that treated applicants arbitrarily and without a rational basis. Because the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest, *Heller*, 509 U.S. at 320,

---

[5] *See Mikheil v. Comm'r of Labor*, 206 A.D.3d 1422 (2022) (upholding denial of pandemic unemployment benefits for claimant, who traveled to Egypt for personal reasons and was unable to return to the United States for four months due to airport closures during COVID-19 pandemic was not available for immediate employment in the United States and could not and did not properly certify for benefits from Egypt); *Lefkow v. Comm'r of Labor*, 208 A.D.3d 1408 (2022) (upholding Board's finding that claimant was ineligible for benefits because she was not available for employment where she had traveled to Costa Rica for personal reasons unrelated to employment, was unable to return to the United States due to travel-ban during COVID-19 pandemic, and she was not authorized to work in Costa Rica).

Plaintiff thus fails to state a personal-capacity claim against Commissioner Reardon under Section 1983 for damages for violating his right to equal protection through policies allowing consideration of geographic factors.

### C.    United States Department of Labor

Plaintiff also brings claims against the US DOL, a federal agency, for "allow[ing] states to impose residency requirements on unemployment benefits." (ECF 15 at 2.) He brings a claim titled, "Failure of Proper Instruction by US DOL," in which he contends that the federal agency's "failure to provide clear guidance and oversight allowed NY DOL to impose in-person reporting requirements." (*Id.* at 4.)

Sovereign immunity bars federal courts from hearing suits against the federal government unless its sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Federal agencies also generally enjoy this sovereign immunity. *See Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."). Plaintiff invokes two potential bases for waiving the sovereign immunity of the United States: the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), and the Administrative Procedure Act (APA), 5 U.S.C. § 702.

### 1.    Tucker Act

The Tucker Act does not waive the US DOL's immunity for claims arising under the Fourteenth Amendment. "The Tucker Act does not itself provide the substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Cray v. Dep't of the Army*, No. 05-CV-0794 (SR), 2006 WL 8455770, at *1-2 (W.D.N.Y. Nov. 16, 2006)

(relying on *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). "In the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.* Plaintiff's Fourteenth Amendment claims against the U.S. DOL are not within the Little Tucker Act's waiver of immunity because these constitutional provisions do not mandate payment of damages. *See*, *e.g.*, *Mullenberg v. U.S.*, 857 F.2d 770 (Fed. Cir. 1988) ("As to [plaintiff's] claim for damages for alleged violation of the due process and equal protection clauses of the Constitution, it is firmly settled that these clauses do not obligate the United States to pay money damages. Therefore, these clauses of the Fifth Amendment do not trigger Tucker Act jurisdiction in the courts."); *Harper v. United States*, No. 15-CV-4833 (CBA) (VMS), 2016 WL 4994996, at \*6 (E.D.N.Y. Aug. 3, 2016) ("[E]xcept for the taking[s] clause of the [F]ifth [A]mendment, the other amendments [to the Constitution] do not require the United States to pay money for their alleged violation."), R & R adopted, 2016 WL 4995077 (E.D.N.Y. Sept. 19, 2016). The Little Tucker Act thus does not provide a basis for waiving the sovereign immunity of the US DOL.

### 2.    APA

Section 702 of the APA "waives the federal government's sovereign immunity in actions brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331" *Lunny v. United States*, 319 F.3d 550, 448 (2d Cir. 2003); *Sprecher v. Graber*, 716 F.2d 968, 973–74 (2d Cir. 1983) ("We have . . . read section 702 as a waiver of sovereign immunity where a proper action is brought under 28 U.S.C. § 1331."). Whether Plaintiff's substantive claim is founded on the APA or not, Section 702's waiver of sovereign immunity "applies only when there has been an 'agency action' within the meaning of 5 U.S.C. § 551(13)." *SEC v. Credit Bancorp, Ltd.*, 297

F.3d 127, 141 (2d Cir. 2002).[6] "[A]gency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

Plaintiff alleges that the US DOL allowed States to impose in-person reporting requirements. The US DOL is a federal agency, 5 U.S.C.§ 551(1), but Plaintiff has not identified an "agency action," 5 U.S.C. § 551(13), to which this claim relates.

Moreover, Plaintiff's allegations that the US DOL failed to instruct states or require them not to apply geographic restrictions in administering pandemic unemployment insurance benefits do not state a claim for a violation of constitutional rights. As set forth above, courts have held that geographic requirements are reasonably related to factual determinations about an unemployment insurance applicant's availability for work. See *Galvan*, 490 F.2d at 1255. In addition, the CARES Act directed the Secretary of the US DOL to provide assistance "through agreements with States  . . . .," 15 U.S.C. § 9021(f)(1), and Plaintiff does not identify any reason why the federal agency was constitutionally required to impose explicit duties on the states about geographic requirements for eligibility. Plaintiff thus fails to state a claim against the US DOL, even if he could establish a waiver of its sovereign immunity.

Finally, Plaintiff argues that the APA "mandates judicial review of agency actions to ensure compliance with the law and procedural fairness." (ECF 15 at 4.) Insofar as Plaintiff seeks judicial review of agency action denying his unemployment insurance benefits, the APA does not authorize review of any NY DOL determinations. The term "agency," for purposes of the APA, "means each authority of the Government of the United States . . . ." 5 U.S.C.§ 551(1).

---

[6] Section 702 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

In other words, the APA only governs federal agencies, not state agencies such as the NY DOL. The APA thus also does not provide for federal court review of any NY DOL decision regarding his unemployment insurance benefits.

**D.    Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed Plaintiff's federal claims, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**E.    Leave to Amend**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with further amendment, the Court declines to grant Plaintiff another opportunity to amend his complaint.

## CONCLUSION

Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii), and, as to some claims, for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:    January 3, 2025
          New York, New York

                                     /s/ Laura Taylor Swain
                                       LAURA TAYLOR SWAIN
                                    Chief United States District Judge

.